## UNITED STATES v. MAISEL.

District Court, S. D. Texas, at Houston.
May 7, 1928.

No. 2333.

Criminal law ⊚⟿982—Probationer under suspended sentence, conducting himself as good citizen during probationary period, held entitled to discharge of proceedings against him (Probation Act, §§ 1, 2 [18 USCA, §§ 724, 725]).

Where, at end of two-year probationary period, during which imposition of sentence was suspended, probationer of his own motion reported to court and prayed discharge from further supervision and for termination of proceedings against him, and showed that he had conducted himself as law-abiding citizen during such period, *held* that, under Probation Act, §§ 1, 2 (18 USCA §§ 724, 725), he was entitled to discharge of proceedings against him without imposition of sentence as a matter of justice and in the interest of social peace, and not as an act of mercy.

Charles J. Maisel was convicted of an offense, imposition of sentence was suspended for two years, and he was put on probation during that period. On defendant's application for discharge from further supervision and termination of proceedings against him. Granted.

H. M. Holden, U. S. Atty., and D. Heywood Hardy, Asst. U. S. Atty., both of Houston, Tex.

B. L. Palmer, of Houston, Tex., and Frank Melvin, of Philadelphia, Pa., for defendant.

HUTCHESON, District Judge. At a former term of this court, on, to wit, the 27th day of February, 1926, this defendant pleaded guilty, when and whereupon, it appearing to the satisfaction of the court that the ends of justice and the best interests of the public, as well as the defendant, would be subserved thereby, an order was entered suspending the imposition of the sentence of the defendant for two years on good behavior, and he was placed upon general probation during that period, there being no probation officer acting in this district. At this the February term of this court, and after the expiration of the two years provided for the suspension of the imposition of sentence, the probationer of his own motion reported to the court with a statement of his conduct during the period of probation, supporting that statement with letters from his employers and others, and praying a discharge from further supervision, and the termination of the proceedings against him:

The United States marshal confirmed the statement of the defendant's petition that he had reported faithfully to him during the period of probation, and that his record had been good during that time, and the court does here find that the defendant has during that period conducted himself properly as a law-abiding citizen, and that he has proved himself worthy of the trust and confidence reposed in him by the suspension aforesaid, and it is my opinion, if the law authorizes the court to discharge the petitioner without imposing a sentence, the same, under the facts of this case, ought to be done.

The Probation Act invoked provides in sections 1 and 2 (18 USCA §§ 724, 725), controlling here, as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the courts of the United States having original jurisdiction of criminal actions, except in the District of Columbia, when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public, as well as the defendant, will be subserved thereby, shall have power, after conviction or after a plea of guilty or nolo contendere for any crime or offense not punishable by death or life imprisonment, to suspend the imposition or execution of sentence and to place the defendant upon probation for such period and upon such terms and conditions as they may deem best; or the court may impose a fine and may also place the defendant upon probation in the matter aforesaid. The court may revoke or modify any condition of probation, or may change the period of probation; provided, that the period of probation, together with any extension thereof, shall not exceed five years.

"While on probation the defendant may be required to pay in one or several sums a fine imposed at the time of being placed on probation and may also be required to make restitution or reparation to the aggrieved party or parties for actual damages or loss caused by the offense for which conviction was had, and may also be required to provide for the support of any person or persons for whose support he is legally responsible.

"Sec. 2. That when directed by the court, the probation officer shall report to the court, with a statement of the conduct of the probationer while on probation. The court may thereupon discharge the probationer from further supervision and may terminate the proceedings against him or may extend the probation, as shall seem advisable.

"At any time within the probation period the probation officer may arrest the probationer without a warrant, or the court may issue a warrant for his arrest. Thereupon such probationer shall forthwith be taken before the court. At any time after the probation period, but within the maximum period for which the defendant might originally have been sentenced, the court may issue a warrant and cause the defendant to be arrested and brought before the court. Thereupon the court may revoke the probation or the suspension of sentence, and may impose any sentence which might originally have been imposed."

These provisions, sweeping, comprehensive, broad as they are, construe themselves, and leave no room for doubt that both the power exists and that in this case it should be exercised, and this not as an act of mercy, as some of the courts, construing the statute, have been inclined to consider, but as an act of broader justice in the interest of social peace.

The statute in effect has accomplished at one stroke for the federal courts the redramatization of the criminal law, which modern theories of criminal administration, with their tremendous emphasis upon individualization, have been slowly effecting, in the states of the United States and in foreign countries, a redramatization in which the controlling motif in the drama is the discovery of the true character of the individual before the bar, and the possibility of his readjustment without confinement, into the social scheme, instead of the nature and character of the offense, with fixed punishment for its happening, the vice of the classic school of criminology, which was satirized in the "Mikado"—

"My object all sublime, I will achieve in time,
   To make the punishment fit the crime, the
      punishment fit the crime."

And so at last there is set up in the criminal laws of the United States a statute to equalize and correct that wherein, by reason of its universality, the criminal law is deficient, under which the court may straightforwardly, and as upon obligation to do justice, be governed by the equitable considerations which arise out of and inhere in the particular case, and dispose of the prisoner accordingly, instead of, as was the case before, the jury catching faintly the "still, sad music of humanity," having by indirection and through the medium of acquittal upon reasonable doubt, to go about effecting the same end, in a case where equitably the prisoner at the bar, though perhaps guilty, ought not to be broken and destroyed by imprisonment.

The statute under review is drawn so as to confer upon and invoke the exercise by the sitting judge of, in the doing of justice, the broadest equitable power in the light of the facts elicited and to be elicited as to the particular defendant, both at the time of the trial and during his period of suspension, to the end that, if it appear that the ends of justice and the interests of the public and of the defendant require, not only that the defendant be unconfined, but that he may redeem himself during the period of his probation so fully as to have the judge, under the statute, discharge the proceedings against him.

This statute combines the American system of probation, which originated in Boston, Mass., in 1869, and from there has spread over the United States and Europe, with the European system of conditional sentence,[1] by using either form of disposition of the defendant and admitting the defendant to probation under either, resulting in each case, if the defendant proves himself worthy, in the final discharge of the prisoner without sentence or judgment. As a writer quoted in De Quiros puts it:

"When the period of probation ends favorably, there remains nothing of the procedure, not even the record of the offense committed. If anything remains, it is the healthful reform of the delinquent."

This defendant having made his application under a statute so conceived, having fully established during the period of his probation, what the court tentatively decided to be true when the imposition was suspended, that the defendant was not anti-social by nature or habit, and that his offense was not habitual, but only a sporadic departure from social obligations, justice, the interests of the public and of the defendant alike, are subserved by fully discharging the proceedings against the prisoner; and it will be so ordered.

---

[1] De Quiros, Modern Theories of Criminology, § 38.